IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL JOSEPH JOHNSTON,

        Plaintiff,

v.                                   Case No. 2:16-cv-02342-JTM

NANCY A. BERRYHILL,[1] *Acting
Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

       Plaintiff Michael Johnston filed a claim for disability insurance benefits under Title II of the Social Security Act, alleging a disability beginning October 31, 2012. After his claim was denied initially and upon reconsideration by the agency, plaintiff sought a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at a hearing on September 19, 2014, in Kansas City, Missouri, before ALJ Linda L. Sybrant. The ALJ issued a written ruling on December 2, 2014, finding plaintiff was not disabled within the meaning of the Act because he retained the capacity to perform certain unskilled light jobs, including retail marker, electronics sub-assembler, and small parts assembler.

       Plaintiff alleges that the ALJ's ruling was erroneous in three respects. First, he contends the ALJ erred in determining his residual functional capacity (RFC), because the ALJ improperly discounted the opinion of one of plaintiff's treating physicians, Dr.

---

[1] Nancy A. Berryhill is substituted for Carolyn W. Colvin as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Ronald Graham, and also failed to take into account other evidence. Dkt. 8 at 25-31. Second, he argues the ALJ erred in evaluating his credibility. *Id.* at 32-34. And third, plaintiff argues the ALJ erred in asking a vocational expert a hypothetical that failed to take account of all of plaintiff's limitations.

## I. Legal standard

Under the Act, the court must accept the factual findings of the Commissioner if they are supported by substantial evidence. 42 U.S.C. § 405(g). The court accordingly looks to whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he suffers from a physical or mental impairment which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant

work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation is unnecessary. *Barkley*, 2010 WL 3001753, at *2. The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal a designated impairment, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. Upon determining the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require a determination of whether the claimant can either perform his past relevant work or can

perform other work that exists in the national economy. *Barkley*, 2010 WL 3001753, *2

(citing *Williams*, 844 F.2d at 751).

The claimant bears the burden at steps one through four to prove a disability that

prevents performance of his past relevant work. *Lax*, 489 F.3d at 1084. The burden then

shifts to the Commissioner at step five to show that, despite the impairments, the

claimant can perform other work in the national economy. *Id. See Weir v. Colvin*, No. 15-

1300-JTM, 2016 WL 6164313, at *1–2 (D. Kan. Oct. 24, 2016).

**II. Discussion.**

Plaintiff was 51 years old at the time of his application. Prior to making his claim,

he worked for over thirty years as a stone or marble mason. The ALJ found that plaintiff

suffered from two severe impairments: degenerative disc disease of the lumbar spine

and status-post aortic valve replacement, as well as several non-severe impairments.

The ALJ found no impairments or combination of impairments that met or equaled the

impairments listed in the regulations. The ALJ found that plaintiff has the capacity to

perform less than a full range of light work, as defined in 20 CFR § 404.1567(b), with

occasional stooping, crouching, crawling, kneeling, and climbing (but no ladders, ropes,

or scaffolds); he needs to avoid concentrated exposure to temperature extremes,

humidity, fumes, odors, dust, gases, and other environmental irritants; and he cannot

do work involving unprotected heights, hazardous moving machinery, or sharp objects.

Tr. at 37. Relying on the testimony of a vocational expert, the ALJ found plaintiff was

unable to perform his past work as a marble mason (a skilled job at the heavy exertional

level), but that he could perform jobs that exist in significant numbers in the national economy.

1. *Determination of residual functional capacity*. Plaintiff contends that "[a]s a result of the errors made by the ALJ in assessing the medical evidence and opinions, her residual functional capacity findings are not supported by substantial evidence in the record." Tr. at 23. Among the errors alleged by plaintiff are the ALJ's decision to give no or little weight to the opinions of plaintiff's treating physicians or providers, including those of Dr. Ronald Graham.

An ALJ must give controlling weight to a treating source opinion about the nature and severity of an impairment if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 CFR § 404.1527(c)(2). When the opinion is not entitled to controlling weight, it is still to be evaluated under the regulatory factors, including:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Van Norman v. Berryhill*, No. 16-2209-EFM, 2017 WL 1397536, at *6 (D. Kan. Apr. 19, 2017) (*citing Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011)). The ALJ is not required to discuss all six regulatory factors, but must "give good reasons, tied to the

factors specified in the cited regulations … for the weight assigned" to a treating source opinion. *Van Norman*, at *6 (*quoting Krauser*, 638 F.3d at 1330)). The reasons must be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). If the ALJ rejects the opinion entirely, she must give specific, legitimate reasons for doing so. *Id*.

Among the evidence considered by the ALJ was a "Pension Fund Medical Examiner's Report" completed by Dr. Graham in February of 2013. Tr. at 389. The report is a one-page questionnaire containing Graham's opinion that plaintiff is permanently incapacitated. It asks the nature of the disability, to which Graham simply replied, "Multifactorial," and the date on which the disability commenced, to which Graham responded, "2000." The report was submitted to plaintiff's union welfare benefit plan as part of an application for disability benefits. Dr. Graham also completed a medical source statement on September 17, 2014, indicating an opinion that even with rests, plaintiff could only sit less than one hour, could stand less than one hour, and could walk less than one hour per day; that he would need more than one hour of work breaks during an eight hour day; that he would have to lie down periodically due to pain in his spine and knees; and that his heart medication makes him extremely fatigued, which together with memory problems left him unable to perform tasks at a competitive pace without multiple errors.

The record shows that the ALJ properly applied the legal standards in assessing the medical opinions. The ALJ gave no weight to Dr. Graham's February 2013 opinion, noting the claim that plaintiff had been disabled since 2000 was inconsistent with the

fact that plaintiff worked until 2012. The ALJ also noted that no explanation was given for the opinion and no objective medical evidence supported it. Finally, the ALJ noted that the ultimate question of whether a person is disabled is a question reserved to the Commissioner. As for Dr. Graham's medical source statement of September 17, 2014, the ALJ likewise gave it no weight, finding it was not supported by the weight of the medical evidence. The ALJ noted that several limitations in that statement were apparently based on arthritis in plaintiff's knees and spine, but there was a lack of objective medical evidence in the record documenting severe arthritis. The ALJ also pointed out that the RFC took into account plaintiff's problems with his spine. Dr. Graham also cited paresthesia in plaintiff's arms and hands as a source of limitations, but the ALJ pointed out that the medical record did not support that finding. Finally, Dr. Graham cited plaintiff's heart problems, but the ALJ noted plaintiff continued to perform heavy work activity until 2012 despite the fact that he had had an aortic valve replacement in 2004. The ALJ elsewhere noted other inconsistencies with the record, including the fact that plaintiff's activities of daily living were inconsistent with Dr. Graham's limitations; plaintiff had obtained routine, infrequent, and conservative medical treatment; the record showed he had a normal, functional aortic valve prosthesis; and claimant acknowledged that his medication was very helpful for his memory problems. In assessing Dr. Graham's opinion, the ALJ followed the requirements of the regulations. She assessed the opinions using appropriate factors, made clear the weight she gave to Dr. Graham's opinion, and offered specific and legitimate reasons for her finding.

Plaintiff similarly objects to the ALJ's consideration of the opinion of Jeff MacMillan, M.D. Dr. MacMillan completed a "Supplemental Pension Fund Medical Examiner's Report" similar to the one completed by Dr. Graham. And like Dr. Graham's report, this one stated in the conclusory terms that plaintiff was "totally and permanently disabled" without any explanation, except for an indication that the disability was due to "spinal stenosis." The ALJ gave no weight to MacMillan's opinion, noting the opinion was unexplained, it was not supported by medical evidence, and the ultimate finding of a disability was a matter exclusively reserved for the Commissioner's determination. *See* 20 CFR § 404.1527(d)(1) (opinions that a person is disabled concern an issue reserved to the Commissioner). The court concludes that the ALJ's assessment was consistent with the regulations. The ALJ considered and relied upon legitimate factors, including the degree to which the opinion was supported by medical tests and other relevant evidence, the explanation (or lack thereof) offered for the opinion, and the consistency of the opinion with the record as a whole.

In determining plaintiff's RFC, the ALJ's thorough opinion expressly considered all of the medical opinions in the record, as well as the other evidence. The ALJ made clear the weight she gave to each medical opinion and the reasons for doing so. Included among the evidence considered was the opinion of a medical consultant, Dick Geis, M.D., who reviewed plaintiff's medical records and completed a physical RFC assessment. Geis opined that plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally; that he could sit for six hours in an eight-hour day and stand or walk for six hours in an eight-hour day; that he could not climb ladders or

other similar items, but could occasionally climb stairs; that he had no manipulative, visual or communicative workplace limitations; and that he should avoid certain environmental conditions. The ALJ gave Geis's opinion substantial weight, finding it was consistent with the record as a whole and was based on Geis's area of expertise. Geis's opinion clearly provides support for the RFC determined by the ALJ. Plaintiff argues the ALJ erred by not giving more weight to the opinions of Drs. Graham and MacMillan, as treating physicians, but given the ALJ's permissible finding that those opinions were unexplained and lacked a basis in the evidence, the ALJ did not err in rejecting the opinions. *See Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003) (a treating physician's opinion may be rejected if it is brief, conclusory, and unsupported by medical evidence).

Finally, plaintiff contends that the ALJ erred in giving significant weight to the opinion of Jason Neufeld, Ph.D., a consulting psychologist who diagnosed plaintiff with a cognitive disorder, but who opined that plaintiff was able to adequately understand, remember, and carry out at least simple instructions; to sustain concentration, persistence and pace in a work setting; and to maintain appropriate social interactions with co-workers, supervisors, and the general public. Plaintiff argues that the ALJ should have given greater weight to the opinion of a former employer who opined that plaintiff had difficulty understanding and carrying out even simple instructions. But the ALJ had to resolve the conflicting evidence on that point, and her decision to give greater weight to the opinion of Dr. Neufeld - a trained psychologist who was able to

examine plaintiff - is based on legitimate factors and is supported by substantial evidence in the record.

2. *Evaluation of plaintiff's credibility*. Plaintiff next challenges the ALJ's assessment of his credibility.  He disputes the ALJ's determination that he engaged in a wide range of daily activities. Dkt. 8 at 32-33.  He also contends the ALJ failed to properly evaluate his testimony that he lacked grip strength and had hand tremors.

The ALJ, after recounting plaintiff's testimony about the nature and severity of his symptoms, found plaintiff's medically determinable impairments could be expected to cause some of the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ discussed the symptoms in detail, and noted a number of contradictions between plaintiff's testimony and the record. For example, he noted that according to plaintiff's functional report and other evidence, he was able to provide for his own personal care, prepare meals, help take care of his two sons, clean, do the laundry, drive, shop for groceries, read, watch television, attend church, use the computer, manage his money, and perform some yard work. Dkt. 3-1 at 36. The ALJ was entitled to consider this evidence of plaintiff's daily activities. He could also reasonably conclude from the evidence that the credibility of plaintiff's claims of disabling back pain, inability to use his hands, and other symptoms, was undermined to some degree by his ability to do what was reasonably characterized as a wide range of activities. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (ALJ may consider the nature of daily activities in determining the credibility of pain testimony).

In reviewing the ALJ's finding, this court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). The ALJ recounted in detail evidence that tended to support her credibility determination. That evidence included not only the plaintiff's ability to perform daily activities, but also his physical ability to perform heavy work until a point in 2012 when he became unemployed and obtained unemployment benefits – which required him to declare himself still able to work – covering a period in which he now alleges he was disabled. The ALJ also cited evidence that plaintiff sought routine, conservative treatment for his symptoms and evidence that plaintiff obtained improvement in his symptoms with medication. In sum, there was substantial evidence supporting the ALJ's conclusion that plaintiff's testimony was not entirely credible concerning the limiting effects of his symptoms. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (cite omitted). The ALJ's findings in this instance were supported by substantial evidence.

3. *Reliance upon the vocational expert's testimony*. Plaintiff contends the ALJ failed to account for all of plaintiff's limitations "in that she failed to properly evaluate the evidence and wrongly determined that plaintiff was not credible." Dkt. 8 at 34. Plaintiff argues that the ALJ's hypothetical to the vocational expert was defective as a result. *Id.* at 35. Inasmuch as this argument is premised on the same arguments the court has already rejected, it provides no grounds for relief. The ALJ offered a hypothetical to the

vocational expert that included plaintiff's RFC and other characteristics shown by the evidence. The expert testified that such a person could not perform plaintiff's past work but could perform other work in the national economy, including the occupations of retail marker, electronics sub-assembler, and small parts assembler, all of which were positions that existed in significant numbers in the national economy. The ALJ's conclusion that plaintiff was not disabled within the meaning of the Social Security Act was thus supported by substantial evidence.

**IT IS THEREFORE ORDERED** this 4th day of May, 2017, that the decision of the Commissioner denying plaintiff's application for disability benefits is AFFIRMED.


___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE